R. Joseph Sexton, OSBA # 226660
joe@galandabroadman.com
Ryan D. Dreveskracht, WSBA # 42593, *pro hac vice admission pending*
ryan@galandabroadman.com
Galanda Broadman, PLLC
PO Box 15146
Seattle, WA 98115
(206) 557-7509
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| KENT SAWYER, in his Personal Capacity and as Personal Representative of the Estate of KENDRA NICOLE SAWYER, | Case No.: |
| Plaintiff, | |
| v. | COMPLAINT |
| DESCHUTES COUNTY, a municipality; L. SHANE NELSON; MICHAEL SHULTS; SARAH MOSLEY; GUNNAR JOHNSON; ASHTON KENT; JACKSON RICH; NEIL MARCHINGTON; AND JOHN and JANE DOES 1-10, | DEMAND FOR JURY TRIAL |
| Defendants. | |

COMES NOW the above-named Plaintiff, by and through attorneys R. Joseph Sexton and

Ryan D. Dreveskracht, of Galanda Broadman, PLLC, and by way of claim alleges upon personal

knowledge as to himself and his own actions, and upon information and belief upon all other

matters, as follows:

COMPLAINT                                    1

## I.    PARTIES

1.    KENT SAWYER is the Personal Representative of the Estate of KENDRA NICOLE SAWYER ("Estate") and KENDRA's father. This is an action arising from KENDRA's wrongful and unnecessary death and the Defendants' negligence, gross negligence, and deliberate indifference to KENDRA's serious medical condition and conditions of confinement. The claims herein include all claims for damages available under Oregon and federal law to KENDRA, her Estate, and all statutory and actual beneficiaries. KENT SAWYER brings suit both in his capacity as the Personal Representative of KENDRA's estate and in his personal capacity as KENDRA's father.

2.    Defendant DESCHUTES COUNTY ("County") is a municipal corporation responsible for administering adult corrections programs, including operation of the Deschutes County Sheriff's Office Adult Jail ("Jail").  The Jail is a medium-security adult corrections facility responsible for providing proper custody, control, and supervision for county, state, and federal inmates in Deschutes County.  The County is also responsible for providing a safe and healthy environment for detainees and inmates within its custody, including appropriate and necessary protection measures, and medical and mental health care.

3.    Defendant L. SHANE NELSON is the County Sheriff.  He supervised, administrated, and managed all County employees and corrections facilities at the time of KENDRA's injuries, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.  Defendant NELSON was responsible for the training, supervision, and discipline of County employees and/or agents, including the below individually named defendants and Does 1 through 10.

COMPLAINT                                    2

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

4.      Defendant MICHAEL SHULTS is the County's Corrections Division Commander. Defendant SHULTS supervised, administrated, and managed all County corrections facilities at the time of KENDRA's injuries, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.  Defendant SCHULTS was responsible for the training, supervision, and discipline of corrections employees and/or agents, including the below individually named defendants and Does 1 through 10.

5.      Defendants NELSON and SHULTS shall hereinafter be referred to collectively as "Supervisory and Policymaking Defendants."  They were at all times state actors.

6.      Defendants SARAH MOSLEY, GUNNAR JOHNSON, ASHTON KENT, JACKSON RICH, and NEIL MARCHINGTON are employees or subcontractors of the County. They were at all times state actors.  These Defendants knew that KENDRA was (1) in the need of medical care; (2) suicidal; (3) in the midst of a mental health crisis; and/or (3) was housed in unconstitutional conditions of confinement.  In spite of this knowledge, these Defendants took no steps to prevent serious injury and/or death to KENDRA. These Defendants were negligent; deliberately indifferent; and/or acted in furtherance of an official and/or *de facto* policy or procedure of deliberate indifference.  These Defendants are sued in their personal capacities.

7.      Defendants JOHN DOES 1 - 10 (hereinafter "Defendants Doe") are subcontractors, employees, and/or agents of the County.  They were at all times state actors.  These Defendants are persons who knew that KENDRA was (1) in the need of medical care; (2) suicidal; (3) in the midst of a mental health crisis; and/or (3) was housed in unconstitutional conditions of confinement.  In spite of this knowledge, these Defendants took no steps to prevent serious injury and/or death to KENDRA.  Each Defendant Doe was negligent; deliberately indifferent; acted in furtherance of an official and/or *de facto* policy or procedure of deliberate indifference; and/or

COMPLAINT                                        3

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

were responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed. The identities of Defendants Doe are unknown at this time and will be named as discovery progresses.

### III.    JURISDICTION AND VENUE

8.    This action arises under ORS 30.020 (Wrongful Death) and the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Case Number: 2023-00008855. ORI: OR0090100.

9.    Venue is proper in the District of Oregon pursuant to 28 U.S.C.§ 1391(b)(1) and (b)(2). Deschutes County is located in the District of Oregon, and the events, acts, and omissions giving rise to the cl███████████████████████████████████████████████

10.    A Notice of Tort Claim has been properly and timely filed with the County.

11.    KE███████████████████████████████████████████████████y's Adult Parole and Probation Office on or about January 13, 2023.

12.    As part of the probation intake ████████████████████████████████████ Information Form. In that form, along with basic personal information (current address, employment, etc.), KENDRA identified that her addiction to opioids caused a "loss of mental health," that she had been previously diagnosed with serious mental illnesses, that she was currently experiencing "anxiety, depression, and panic attacks," and that she had attempted suicide "several times" in the past:

Have you ever attempted suicide? ☐ No ☑ Yes.

COMPLAINT    ████████████    4

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

13.    KENDRA was scheduled to meet with Defendant SARAH MOSLEY, her assigned Deschutes County Parole and Probation Officer on January 24, 2023. Prior to that appointment, Defendant MOSLEY reviewed the Intake Personal Information Form. KENDRA missed the appointment, however. ███████████████████

14.    On January 26, 2023, Defendant MOSLEY emailed KENDRA:

You had an office visit with ████████████ for 1/24/23 at 9:00AM that you failed to report for. I have attempted to contact you twice via telephone and left you voicemails. You have not responded to my voicemails. I went to the address you provided today and I was advised you have not lived there for about 6 months and you are not currently living there. This will be my last attempt to contact you before I request a warrant for your arrest. I would like to work with you so I hope you will contact me. 541-330-8267.

15.    The next day, January 27, 2023, Defendant MOSLEY issued  a report recommending a warrant for KENDRA's arrest, which was granted by court order later that day.

16.    On February 3, 2023, KENDRA responded to Defendant MOSLEY:

My apologies for not co██████████████████uld like to talk to you. I will contact you via cell phone today.

To which Defendant MOSLEY immediately replied:

You may call me if you would like. Please be advised there is an active warrant for your arrest.

17.    Because it was not required by Deschutes County policy or training, at no time did Defendant MOSLEY communicate the information that she had learned about KENDRA's serious mental illness, previous suicide attempts, or current increased suicide risks (i.e. likely opioid withdrawal and depression) to the Jail, where she knew KENDRA would be detained.

18.    Late on February 11, 2023, the Bend Police Department ("BPD") were notified of a woman stranded near an Albertson's. BPD arrived at the scene, ran KENDRA's name and discovered that she had an outstanding warrant from Deschutes County, and arrested KENDRA and took her to the Jail.

COMPLAINT                                            5

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

19.      KENDRA was booked into the Jail at 12:26 a.m. on February 12, 2023. Defendant GUNNAR JOHNSON, who is not trained in healthcare or mental healthcare, conducted a pre-booking interview of KENDRA, which did not include a suicide risk assessment. Per Deschutes County's policies, customs, and established practices, suicide risk assessments are not part of the booking or pre-booking process.

20.      KENDRA reported to booking officers that "she would withdrawal [sic] from Fentanyl."

21.      Medical records available to intake officers and staff at this time, including Defendant JOHNSON, also included information that KENDRA was taking medication for serious mental illnesses, as well as an "attempted suicide" and a "family history of suicide attempts."

22.      Per Deschutes County policy, custom, and established practice, all detoxing females are housed in the 1600 Unit, which consists of a number of single-cell units where inmates are locked down, alone, for 23 hours a day. KENDRA was assigned cell #1606. In a phone call with her mother, KENDRA described the cell as a "coffin."

23.      At 7:04 a.m. on February 13, 2023, Defendant ASHTON KENT, who is not trained in healthcare or mental healthcare, conducted a "Detox Check-in" with KENDRA. According to Defendant KENT's notes, KENDRA informed him at this time that she did "not feel good." Because it was not required by Deschutes County training, policy, custom, or established practice, KENDRA was not referred to a mental health or medical provider despite her obviously worsening condition.

24.      At 9:15 a.m. on February 13, 2023, KENDRA's mother came to the Jail with a bag of Fentanyl pills that she had found in KENDRA's bedroom, telling Defendant NEIL MARCHINGTON what the County already knew: that KENDRA would likely be withdrawing

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

from opioids. In response, and in compliance with Deschutes County's policies, customs, and established practices, Deputy Marchington did nothing.

25.     In a 2:06 p.m. call to her mother, KENDRA mentioned that her conditions of confinement were making her "loony."

26.     In a 2:26 p.m. call to her father, KENDRA stated, "the nurse is not giving me any medication to help me and I have already told her over and over how bad my withdrawals are getting and she still won't help me."

27.     In a 3:24 p.m. call to her mother, KENDRA said that she "need[s] to find a will to live," mentioned being hurt "by her friend committing suicide," and expressed sadness about "her boyfriend being arrested."

28.     At 6:11 p.m., KENDRA was allowed to leave her room to mop and sweep the floors. KENDRA used a towel to dry off the shower, then was allowed to take the towel into her cell.

29.     At 7:50 p.m., Defendant JACKSON RICH observed KENDRA in her cell during a "supplies pass." Defendant RICH knew that KENDRA was going through severe withdrawals because it was obvious and because he had taken her to the nurse the previous day for that very reason. KENDRA told Defendant RICH that she "was having trouble because of her withdrawal from Fentanyl" and "having trouble being by herself in her cell for 23 hours a day." Because it was not required by Deschutes County training, policy, custom, or established practice, KENDRA was not referred to a mental health or medical provider. Defendant RICH did nothing in response to this information form an obviously deteriorating inmate.

COMPLAINT                                          7

30.     It was glaringly obvious at this time—even to her fellow inmates, with no medical or mental health training—that KENDRA was going through severe withdrawals, in both mental and physical pain, and was in great need of medical intervention.

31.     At 8:30 p.m.—40 minutes after Defendant RICH's interaction with KENDRA— KENDRA was found hanging from a towel that she had been allowed to tie onto an easily accessible tie-off point on her bed.

32.     In other words, **for 40 minutes**, between the hours of 7:50 p.m. and 8:30 p.m., KENDRA was on her own—no safety checks, no visual observations, and no custodial care whatsoever.

33.     Notably—and somewhat eerily, as discussed in more detail below—just two years earlier a 31-year-old detoxing inmate hanged himself in a single-cell, using a towel, tied to the same type of bunk bed. He was on the same 23-hour lockdown schedule, with the same cell check requirements. In other words, Deschutes County absolutely knew of the dangerous conditions of confinement that it was exposing detoxing inmates to prior to KENDRA's death, but did nothing about it.

34.     When she was found, KENDRA's skin was still warm to the touch and her face was only slightly pale. Although she was drooling, KENDRA's drool had not yet reached her clothing. More likely than not, had Deschutes County employed a 30-minute safety check policy for withdrawing inmates/inmates in 23-hour lockdown units, KENDRA would still be alive today.

35.     Deputies and medical staff performed lifesaving emergency interventions and ultimately were able to regain a pulse. KENDRA was taken to the hospital, where she continued to pulsate on life support.

COMPLAINT                                   8

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

36.     At 10:40 p.m. on February 13, 2023, Deschutes County sought and obtained KENDRA's "release" of custody, so that Deschutes County no longer had to pay for her care.

37.     Kendra died at 3:58 p.m. on February 19, 2023. She was just 22 years old.

38.     Suicide is the leading cause of death in America's jails. Suicide attempts at the Jail more than doubled in recent years, from six in 2021 to thirteen in 2023. Yet Deschutes County had no suicide prevention policy. In the alternative, Deschutes County has a suicide prevention policy, but it is obviously lacking and is not followed as a matter of custom and established practice.

39.     Although Deschutes County has a medical segregation policy, it is not followed as a matter of custom and established practice, and its deputies are not trained on it. Deschutes County's "Medical Segregation" Policy reads as follows:

### SECTION F:  MEDICAL SEGREGATION

**F-1.**   M-Seg shall not be punitive in nature; inmates housed in M-Seg will be provided equal living conditions and all privileges of the general population except where there is an overriding security or medical concern to restrict certain privileges. Unless there is a documented restriction, M-Seg inmates shall receive two (2) hours out-of-cell per day.

**F-2.**   Inmates in M-Seg will meet one or more of the following criteria:

    a.   Medical risk.
    b.   Alcohol or Substance withdrawal.

**F-3.**   Medical staff shall physically examine medically segregated inmates once per shift and determine whether circumstances warrant continued placement in segregation. If continued segregation is warranted, the medical staff shall provide any necessary day-to-day instructions to deputies.

**F-4.**   Medically segregated inmates shall be directly supervised by a deputy 24 hours a day. Deputies will conduct a special watch round between each hourly round. These and other important activities shall be documented on *Inmate Round Record Form No. 402.*

But KENDRA was "by herself in her cell for 23 hours a day"; KENDRA was not "directly supervised by a deputy 24 hours a day"; and no "special watch round" was conducted for KENDRA.

COMPLAINT                                          9

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

40.     Although Deschutes County has a medical unit safety check policy, it is not followed as a matter of custom and established practice, and deputies are not trained on it. Deschutes County's medical unit safety check policy reads as follows:

> **Medical and Behavioral Health Unit Rounds.** The Medical and Behavioral Health Unit consists of six individual cells and a deputy workstation adjacent to the Medical Unit office. When one or more cell is occupied, a deputy will be assigned to the medical workstation. This assignment allows members to more closely monitor inmates who require additional medical care or behavioral health observation. In this unit, rounds will be conducted at least every 30 minutes and may be more frequent as determined by the Medical Director, nurse, BHS or supervisor.

But rounds were not "conducted at least every thirty minutes" for KENDRA.

41.     Although Deschutes County has an opiate withdrawal policy, it is not followed as a matter of custom and established practice, and deputies are not trained on it. Deschutes County's opiate-withdrawal policy requires that withdrawing inmates be assessed using the Clinical Opiate Withdrawal Scale ("COWS") once daily.[1] But KENDRA was never assessed using the COWS.

42.     Deschutes County had a policy, custom, and established practice of not requiring that an inmate be psychologically cleared prior to 23-hour isolation housing, as required by national standards.

43.     The policies, practices, and established practices described above were all contributory factors to KENDRA's death.

44.     What is more, Deschutes County knew that these policies put inmates like KENDRA at risk of serious harm or death because it has obvious and it had experienced a string of deaths caused by them, including one in December of 2021; one in February of 2020; one in December of 2020; one in March of 2018; one in May of 2015; and one in December of 2014.

---

[1] This policy is also facially likely to put inmates at risk of serious harm or death. The standard of care requires assessments at least every four hours.

COMPLAINT                                          10

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

45.    The December 2021 suicide death of 31-year-old detoxing inmate who hanged himself in a single cell using a towel tied to his bed is particularly poignant given the facts here.

46.    The December 2014 death of detoxing young man at the Jail is also important because it put Deschutes County on notice that its policies, customs, and established practices were entirely lacking. Specifically, the pleadings in a lawsuit generated by the December 2014 incident put Deschutes County on notice that the following policies, customs, and established practices were putting inmates at increased risk of harm or death:

    a.  Not immediately sending inmates in need of emergent care to a hospital setting.

    b.  Having corrections deputies make medical assessments and decisions.

    c.  Doing insufficient security checks.

    d.  Understaffing of medical personnel.

    e.  Understaffing of corrections deputies.

    f.  Failing to properly supervise and manage corrections deputies.

    g.  Allowing a culture that permits inmate abuse and neglect to thrive.

*Mays v. Deschutes County*, No. 15-898 (D. Or.), ECF No. 58.

47.    Indeed, the Plaintiff in *Mays* made clear in proposed amendments to Plaintiff's complaint that future inmates at the Jail were at grave risk because of Defendants' deficient policies, customs, and established practices:

> If the [policy] changes requested by Plaintiff are not ordered there is a substantial risk of immediate harm to other inmates and those held in the Deschutes County jail particularly where the current sheriff has indicated his support and endorsement of the conduct of the defendants on the night of Eddie Mays [sic] death . . . .

*Mays*, No. 15-898 (Sept. 22, 2016), ECF No. 48-1, ¶ 111. The proposed changes to Deschutes County's policies and procedures that *Mays* identified included changes to officer training policies

COMPLAINT                                11

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

and practices, and changes to policies related to those detained at the Jail suffering from drug addiction.  Ultimately, this Court declined to grant Mays' motion to amend their complaint because the Court lacked subject matter jurisdiction to grant a deceased person's estate future injunctive relief related to future detainees at the Jail. *Mays*, No. 15-898 (Nov. 16, 2016), ECF No. 57. Notwithstanding the Court's order on jurisdictional grounds, for several years before KENDRA's death Deschutes County was on notice that its policies and procedures were dangerously lacking and required change, without which change further harm and other inmate deaths were likely.

48.    Housing inmates alone, in a single cell, by themselves for 23 hours is a known and obvious suicide risk factor. Opioid withdrawal is also a known and obvious suicide risk factor. A policy, custom, or established practice that not only permits, but requires these two risk factors to exist together is unconscionable, and akin to throwing gasoline on a match. That allowing such a policy, custom, or established practice to exist would put inmates at an increased risk of harm, or even death, would be obvious to any correctional professional exercising his or her professional judgment.

49.    To provide some context, as recently articulated by the U.S. District Court for the Eastern District of New York in *United States v. D.W.*:

> Solitary confinement, generally speaking, is the practice of socially isolating a prisoner from the general inmate population and depriving him or her of most environmental stimuli.  It has long been used as a form of punishment. Prisoner isolation is also adopted in response to safety concerns; inmates who are at risk of harm are segregated from the general population for their own protection.  Even though non-punitive, inmates in "protective custody"—as this form of isolation is known—experience the same deprivations as prisoners separated for punitive purposes. . . . Solitary confinement is punishment taken to the extreme. . . . Solitary confinement induces the bleakest depression, plunging despair, and terrifying hallucinations. . . . If these inmates didn't have mental health issues before they entered solitary, they do now. . . . After even relatively brief periods of solitary confinement, inmates have exhibited symptoms such as hypersensitivity to stimuli, perceptual distortions and hallucinations, increased anxiety, lack of impulse control, severe and chronic depression, appetite and weight loss, heart palpitations,

COMPLAINT                                    12

sleep problems, and depressed brain functioning. . . . [T]he restriction of environmental stimulation and social isolation associated with confinement in solitary are strikingly toxic to mental functioning-even causing "confusional psychosis" in some inmates. . . . Research has demonstrated that time served in solitary confinement can lead to serious mental illness in healthy individuals. It significantly exacerbates the condition of those already suffering from emotional instabilities. . . . In solitary confinement ordinary stimuli become intensely unpleasant and small irritations become maddening. Individuals in such confinement brood upon normally unimportant stimuli and minor irritations become the focus of increasing agitation and paranoia. . . . [C]ountless individuals in solitary confinement . . . have become obsessively preoccupied with some minor, almost imperceptible bodily sensation, a sensation which grows over time into a worry, and finally into an all-consuming, life-threatening illness. . . . [I]nmates with pre-existing mental illnesses are likely to suffer the most severe consequences from isolation.

No. 13-0173, 2016 WL 4053173, at *46, *60-63 (E.D.N.Y. Jul. 28, 2016) (quotation and citation omitted); *see also H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 381 (N.D.N.Y. 2020) (same); *Diaz v. Wall*, No. 17-94, 2018 WL 1224457, at *7 (D.R.I. Mar. 8, 2018) (noting that the consequences solitary confinement "are so well-known that numerous medical associations have all issued formal policy statements opposing the practice") (quotation omitted).

50.    The aforesaid acts and omissions of Defendants deprived KENDRA of her right to be free from cruel and unreasonable punishment, and to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution; directly caused and/or directly contributed to her pain, suffering, and a general decline of her quality of life; directly caused and/or directly contributed to cause her death; directly caused and/or directly contributed to cause her family to suffer loss of services, companionship, comfort, instruction, guidance, counsel, training, and support; and directly caused and/or directly contributed to cause her family to suffer pecuniary losses, including but not limited to medical and funeral expenses.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

51.     Prior to her death and while in the custody of Deschutes County, KENDRA suffered extreme physical and mental pain, terror, humiliation, anxiety, suffering, and emotional distress.

52.     KENDRA's death was completely unnecessary and could have been easily prevented via provision of even the most basic medical and mental health care and treatment.

## V.  CLAIMS

**A.**     **FIRST CAUSE OF ACTION – NEGLIGENCE – WRONGFUL DEATH (ORS 30.020)**

53.     Deschutes County had a duty to care for inmates and provide reasonable safety and medical and mental health care.

54.     This duty extends to foreseeable self-inflicted harms and includes protecting inmates against suicide.

55.     This duty extends to foreseeable medical harms and includes protecting inmates from opioid use disorder-related injuries.

56.     This duty exists because prisoners, by virtue of incarceration, are unable to obtain medical and mental health care for themselves.

57.     Deschutes County breached this duty, and was negligent, when it failed to have and follow proper training, policies, and procedures on the assessment of persons with apparent medical and mental health needs, as described above.

58.     Deschutes County breached this duty, and was negligent, when it failed to adequately treat KENDRA's medical and mental health needs, as described above. Indeed, because KENDRA's medical and psychiatric needs were entirely ignored, Deschutes County was grossly negligent.

COMPLAINT                                   14

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

59.     Deschutes County breached this duty, and was negligent, when it failed to have and follow proper training, policies, and procedures on the provision of reasonable and necessary medical and mental healthcare and treatment to inmates.

60.     Deschutes County breached this duty, and was negligent, when it failed to ensure adequate and proper medical staffing at the Jail.

61.     Deschutes County breached this duty, and was negligent, when it failed to ensure that KENDRA was properly supervised and/or that cell checks were conducted in a safe, timely, and consistent manner.

62.     Deschutes County breached that duty, and was negligent, when it failed to ensure that KENDRA received adequate medication.

63.     Deschutes County breached that duty, and was negligent, when it ignored notification of KENDRA's serious physical and mental health conditions and suicidality.

64.     Deschutes County breached that duty, and was negligent, when it failed to properly assess and treat KENDRA prior to her death.

65.     As a direct and proximate result of the breaches, failures, and negligence of Deschutes County, as described above and in other respects as well, KENDRA died.

66.     KENDRA suffered unimaginable pre-death pain, suffering, embarrassment, and terror.

67.     As a direct and proximate result of the breaches, failures, and negligence of Deschutes County, as described above and in other respects as well, Plaintiffs have incurred and will continue to incur economic and noneconomic damages in an amount to be determined at trial.

68.     As a direct and proximate result of the negligence of Deschutes County, KENDRA's father has suffered the loss of familial association with KENDRA.  Mr. Sawyer has

COMPLAINT                                          15

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

suffered and continues to suffer extreme grief and harm due to mental and emotional distress as a result of KENDRA's wrongful death.

B.     SECOND CAUSE OF ACTION – 42 U.S.C. § 1983

69.     The acts and failure to act described above were done under color of law and are in violation of 42 U.S.C. § 1983, depriving Plaintiffs of their civil rights.

70.     At the time KENDRA was detained by Deschutes County, it was clearly established that the Fourteenth Amendment imposes a duty on jail officials to provide humane conditions of confinement, including adequate medical and mental health care, and to take reasonable measures to guarantee the safety of the inmates.

71.     Being subjected to unnecessary physical and mental pain and suffering is simply not part of the penalty that criminal offenders pay for their offenses against society.  As a result, municipalities and Jail officials are liable if they know that an inmate or inmates face a substantial risk of serious harm and callously disregards that risk by failing to take reasonable measures to abate it.

72.     Here, Defendants MOSLEY, JOHNSON, KENT, RICH, and MARCHINGTON knew that KENDRA faced a substantial risk of suicide, yet callously disregarded that risk by failing to take reasonable measures to abate it.

73.     Here, Defendants MOSLEY, JOHNSON, KENT, RICH, and MARCHINGTON knew that KENDRA faced a substantial risk of harm or death due to her serious medical condition, yet callously disregarded that risk by failing to take reasonable measures to abate it.

74.     Here, Defendants MOSLEY, JOHNSON, KENT, RICH, and MARCHINGTON knew that KENDRA was suffering from physical and mental illness, yet callously disregarded these afflictions by failing to take reasonable measures to abate them.

COMPLAINT                                      16

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

75.     Having an inmate in custody creates a duty of care that must include enough attention to mental health concerns that inmates with obvious symptoms receive medical attention. Defendants had numerous opportunities to meet their responsibilities to help KENDRA, but no one did.  One cannot avoid responsibility by putting one's head in the sand.

76.     Here, Deschutes County and its Policymaking and Supervising Defendants knew of and callously disregarded the excessive risk to inmate health and safety caused by the County's inadequate formal and informal policies, including a lack of training, funding, and supervision.

77.     Deschutes County and its Policymaking and Supervising Defendants knew of this excessive risk to inmate health and safety because it was obvious and because numerous other inmates had been injured and/or killed as a result of these inadequacies in the past.

78.     Deschutes County and its Policymaking and Supervising Defendants were responsible for a policy, practice, or custom of maintaining a longstanding constitutionally deficient safety and medical and mental health care, and training thereon, which placed inmates like KENDRA at substantial risk.

79.     There was little to no supervision of KENDRA and inmates like her because Deschutes County and its Policymaking and Supervising Defendants maintained a known policy and custom of understaffing and overcrowding.

80.     While it appears that Deschutes County did have a suicide prevention policy, Deschutes County's actual policy was to ignore the written policy; a written policy intended to protect inmates from the foreseeable consequences of not following the written policy, including death by suicide.

COMPLAINT                                    17

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

81.     Deschutes County also has an impermissible policy of a using cursory mental health screenings and "check-box determinations" to determine that mentally ill inmates are not a danger to themselves.

82.     Deschutes County also had an unwritten policy of understaffing and indifference to inmate supervision that was maintained with deliberate indifference. Deschutes County and its Policymaking and Supervising Defendants know that the Jail is understaffed and that their employees often have trouble completing all of their duties as a result of this understaffing. Yet these Defendants failed to take any steps to correct these inadequacies.

83.     The Defendants' lack of clear delineation of authority and inadequate means of communication with respect to assessing risks of suicide was an additional policy that caused jailers' failure to prevent KENDRA's pain, suffering, and death. In essence, there is a "who's on first" problem at the Jail where an established practice of non-communication to one another or amongst themselves in regard to inmate suicidality and safety has been implemented.

84.     Defendants MOSLEY, JOHNSON, KENT, RICH, and MARCHINGTON were subjectively aware that KENDRA was suicidal, in the midst of a mental health crisis, and/or in need of medical assistance because of a serious medical condition.  From this evidence, a reasonable jailer and/or healthcare provider would have been compelled to infer that a substantial risk of serious harm existed.  Indeed, Defendants MOSLEY, JOHNSON, KENT, RICH, and MARCHINGTON did infer that a substantial risk of serious harm existed, but failed to take any steps to alleviate this risk.  And KENDRA died as a result.

85.     Upon information and belief, Defendants MOSLEY, JOHNSON, KENT, RICH, and MARCHINGTON displayed deliberate indifference when they ignored requests from other

COMPLAINT                                    18

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

inmates and/or healthcare providers to treat KENDRA's mental and physical health care, depression, and self-harm needs.

86.    "The requirement of deliberate indifference is less stringent in medical needs cases . . . because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs."  *Lyons v. Busi*, 566 F. Supp. 2d 1172, 1191 (E.D. Cal. 2008) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

87.    Deschutes County and its Policymaking and Supervising Defendants had a policy, custom, and practice of denying treatment; these policies, customs, and practices posed a substantial risk of serious harm to the inmates in the Jail, including KENDRA, and these Defendants knew that the at-issue policies, customs, and practices posed this risk.

88.    Deschutes County and its Policymaking and Supervising Defendants knew of a number of previous suicides, incidences of self-harm, and complications from opioid withdrawal, yet deliberately did nothing to provide its personnel with adequate training to prevent future suicides, incidences of self-harm, and complications from opioid withdrawal. Instead, Deschutes County and its Policymaking and Supervising Defendants acquiesced in a long-standing policy and custom of inaction.

89.    Indeed, even without the previous in-custody deaths, it was obvious that a total lack of training to appropriately address mentally and physically ill inmates would result in the harm caused here. The Deschutes County and its Policymaking and Supervising Defendants were expressly informed that its official policies were being ignored and that its unofficial or de facto

COMPLAINT                                      19

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

policies would result in inmate deaths, yet deliberately did nothing to address these unofficial or de facto policies.

90.     Indeed, the Deschutes County and its Policymaking and Supervising Defendants had numerous opportunities to obtain training to appropriately address physically and mentally ill inmates, but knowingly and deliberately declined to obtain it.

91.     Deschutes County and its Policymaking and Supervising Defendants have consistently failed to attend to the serious medical needs of inmates. Deschutes County and its Policymaking and Supervising Defendants knew that there were successful suicides and suicide-related emergencies in recent years, and that there were relatively inexpensive prevention measures available. Yet Deschutes County and its Policymaking and Supervising Defendants did not employ any of these measures.  In addition, these Defendants knew that Deschutes County employees were not providing adequate suicide prevention care or opioid use disorder care.

92.     Deschutes County and its Policymaking and Supervising Defendants knew of and callously disregarded the excessive risk to inmate health and safety caused by their failure to provide reasonable and necessary medical care and treatment.

93.     Deschutes County and its Policymaking and Supervising Defendants knew of and callously disregarded the excessive risk to inmate health and safety caused by their failure to have and follow policies and procedures for suicide screening and prevention.

94.     This callousness reflects a custom, pattern, and/or policy wherein the Jail and its Policymaking and Supervising Defendants either intentionally violated or were deliberately indifferent to the health, welfare, and civil rights of KENDRA and her fellow inmates.

95.     As a direct and proximate result of the deliberate indifference of Defendants, as described above and in other respects as well, KENDRA died a terrible and easily preventable

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

death. She suffered pre-death pain, anxiety, and terror, before going into a mental health crisis, asphyxiating, and leaving behind a loving family.

96.     As a direct and proximate result of the deliberate indifference of Defendants, Plaintiff KENT SAWYER has suffered the loss of familial association with KENDRA, in violation of his Fourteenth Amendment substantive due process rights.  Plaintiffs, each of them, have suffered and continue to suffer extreme grief and harm due to mental and emotional distress as a result of KENDRA's death.

97.     Defendants have shown reckless and callous disregard, and indifference to inmates' rights and safety, and are therefore subject to an award of punitive damages to deter such conduct in the future.

## VI.    JURY DEMAND

97.    Plaintiff hereby demands a trial by jury.

## VII.    AMENDMENTS

98.    Plaintiff hereby reserves the right to amend this Compliant.

## VIII.    RELIEF REQUESTED

99.     Damages have been suffered by all Plaintiffs and to the extent any state law limitations on such damages are purposed to exist, they are inconsistent with the compensatory, remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

100.    WHEREFORE, Plaintiff requests a judgment against all Defendants:

(a)    Fashioning an appropriate remedy and awarding economic and noneconomic damages, including damages for pain, suffering, terror, loss of consortium, and loss of familial relations, loss of society and

COMPLAINT                                          21

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

companionship, hedonic damages, and loss of life damages pursuant to 42

U.S.C. §§ 1983 and 1988, in an amount to be determined at trial;

(b)     Awarding punitive damages;

(c)     Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

1988, or as otherwise available under the law;

(d)     Declaring the defendants jointly and severally liable;

(e)     Awarding any and all applicable interest on the judgment; and

(f)     Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted this 9th day of February, 2024.

GALANDA BROADMAN, PLLC

s/ R. Joseph Sexton
R. Joseph Sexton, OSBA # 226660
s/ Ryan D. Dreveskracht
Ryan D. Dreveskracht, WSBA # 42593
*Pro hac vice admission pending*
Attorneys for Plaintiffs
P.O. Box 15146 Seattle, WA 98115
(206) 557-7509 Fax: (206) 299-7690
Email: joe@galandabroadman.com
Email: ryan@galandabroadman.com

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509